The **UNITED ASSOCIATION OF BLACK LANDSCAPERS, Eddie Martin, Thomas Wynn, Harold Burris, Lloyd Mayweather, Jose Rosales, Charles Burton, Rufus Powell, John Doe, and Jane Doe, Plaintiffs,**

v.

**CITY OF MILWAUKEE, Department of Public Works, Bureau of Forestry of the City of Milwaukee, Robert Skiera, City Forester for the City of Milwaukee, Richard Meyer, Assistant City Forester for the City of Milwaukee, John Norquist, Mayor of the City of Milwaukee, E. Frank Bridges, President, Board of City Service Commissioners of the City of Milwaukee, City Service Commission of the City of Milwaukee, Defendants.**

**Thomas H. WYNN, Jr., Plaintiff,**

v.

**CITY OF MILWAUKEE, Department of Public Works of the City of Milwaukee, Robert Skiera, City Forester of the City of Milwaukee and John O. Norquist, Mayor of the City of Milwaukee, Defendants.**

**Nos. 88–C–1144, 88–C–1336.**

United States District Court, E.D. Wisconsin.

Feb. 14, 1990.

---

Robert Sutton, Sutton & Kelly, Milwaukee, Wis., for plaintiffs.

Bruce Schrimpf, Asst. City Atty., Milwaukee, Wis., for defendants.

## ORDER

CURRAN, District Judge.

The present action was commenced on October 31, 1988, by the United Association of Black Landscapers, an unincorporated group allegedly comprised of black employees of the City of Milwaukee, Bureau of Forestry, and various employees of the Bureau of Forestry against the City of Milwaukee, the Department of Public Works, Bureau of Forestry; Robert Skiera, the Chief Managing Officer and Director of that agency; Richard Meyer, the Assistant City Forester; the City Service Commission of the City of Milwaukee; and the President of its Board, E. Frank Bridges. The complaint purported to state claims under 42 U.S.C. § 1981, § 1983, § 1985(2) and (3), § 1988 and § 2000e–5(f)(2). The complaint was answered on November 22, 1988.

On December 2, 1988, Thomas Wynn, one of the plaintiffs in the federal action commenced an action in the Milwaukee County Circuit Court against the City of Milwaukee, Department of Public Works, Bureau of Forestry of the City of Milwaukee, Robert Skiera and John Norquist. Mr. Wynn was represented by the same attorney who represented him and the other plaintiffs in the federal action. This complaint alleged that the plaintiff was denied promotion due to his race. He further alleged that he had exhausted his administrative remedies and had received his Right to Sue letter. The defendants removed *Wynn v. City of Milwaukee* to federal court, requesting in the petition for removal that the two cases be considered together.

The court conducted a scheduling conference on January 19, 1989, at which time various deadlines were set for discovery matters and dispositive motions. A final pretrial conference was scheduled for February 28, 1990, and four trial dates were scheduled for March, April, June and August of 1990. On February 6, 1989, the parties stipulated that the two actions could be consolidated and it was so ordered by the court on the following day. On September 5, 1989, the plaintiffs submitted their witness list stating they intended to call the named plaintiffs, Eddie Martin, Thomas Wynn, Harold Burris, Lloyd Mayweather, Jose Rosales, Charles Burton and Rufus Powell in addition to Cora Mason, Helen Renfro, a records custodian and their expert witness, Dr. J.L. Stebbins, a data analyst and statistician.

On November 1, 1989, the defendants filed a voluminous motion for summary judgment. The motion, which is supported by numerous affidavits and twenty-eight depositions, arrived in chambers in a shopping cart. On the day before a response from the plaintiffs was due they filed a motion for an order summarily denying the motion for summary judgment or, in the alternative, modifying the scheduling Order.

The motion to deny the summary judgment motion was denied but the plaintiffs were given a generous extension of time to

respond. The four-and-a-half page opposing brief was filed on January 16, 1990, fully two-and-a-half months after the summary judgment motion was filed. Essentially the plaintiffs argued that summary judgment is inappropriate in Title VII cases. The brief string cited the "thirteen definitive" Title VII cases decided by the Supreme Court[1] concluding that "[w]hat emerges clearly from a reading of these cases is that the high court does not favor resolution of claims of institutional racial discrimination in employment practices by summary judgment." (Plaintiffs' Brief at page 2) The brief further points out that in most of the cited cases the matter had been fully tried at the district court level. The plaintiffs go on to argue that statistical evidence may be probative of a discriminatory employment practice and where, presumably as here, the claim is that the testing is discriminatory all aspects of the testing procedure may be relevant at trial. They proceed with the proposition that a situation in which the majority of blacks hold lower paying jobs is relevant and that plaintiffs are not required to submit direct evidence of discriminatory intent. From these premises the plaintiffs arrive at the "inescapable conclusion" that summary judgment must be denied.

Without giving the court any guidance in the brief, the plaintiffs have submitted portions of the depositions previously submitted by the defendants of the following black employees, most of whom were not even named as potential witnesses: Rufus Powell, Torrence Brunson, Charles Burton, Dale Robbins, Albert Henry, Charles Ruffin, Jeffrey Smith, Arthur Ellis, William Pulliam, Donald Davis and Johnnie Green. The plaintiffs have also submitted the affidavits of Thomas Wynn, Eddie J. Martin, Jr. and their expert witness, Jack L. Stebbins. Finally, there are three exhibits with a breakdown by race of the Bureau of Forestry for the pay periods of November 6, 1987, January 6 and 7, 1987, and June 6 and 8, 1988.

Despite plaintiffs' protestations to the contrary, court's routinely and properly grant summary judgment to defendants in Title VII cases. In the recent case of *International Union, UAW v. Johnson Controls, Inc.*, 886 F.2d 871 (7th Cir.1989), the Seventh Circuit explained the tasks of the parties and the court as follows:

> The allocation of the burden of proof under substantive Title VII law outlined in *Wards Cove* plays a significant role in summary judgment proceedings of this nature. We have previously recognized that: "Summary judgment is properly entered in favor of a party when the opposing party is unable to make a showing sufficient to prove an essential element of a case on which the opposing party bears the burden of proof." *Common v. Williams*, 859 F.2d 467, 469 (7th Cir.1988). The Supreme Court explained the reasons for this rule in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986):
>
> > "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden the proof at trial. In such

1. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158, (1971); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Teamsters v. United States*, 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 957, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Connecticut v. Teal*, 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982); *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Local 28 of the Sheet Metal Workers v. EEOC*, 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986); *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) and *Wards Cove Packing Co. v. Atonio*, — U.S. —, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).

a situation, there can be 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on all essential element of her case with respect to which she has the burden of proof."

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 1592-93, 20 L.Ed.2d 569 (1968)). Thus, the question we must address is whether the UAW, which bears the burden of persuasion, has presented evidence sufficient to permit the district court to conclude that Johnson Controls' business necessity defense cannot be factually supported.

■ Our inquiry must be based on the underlying premise that the creation of a record adequate to meet legal challenges is the responsibility of the parties litigating the case. We may neither add nor subtract from the record; we must accept it as it is. Thus, "[w]hen confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue, may not rest on its pleadings, but must affirmatively demonstrate by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County, REMC*, 840 F.2d 405, 410 (7th Cir.1988) (emphasis in original). As we have also noted: *"A district court need not scour the record to make the case of a party who does nothing ... [C]ourts will not discover that the movants slighted contrary information if opposing lawyers sit on their haunches; judges may let the adversary system take its course."* (emphasis added)

*Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989).

*Id.* at 887-88.

The plaintiffs appear to rest their case on the fact that there are no black supervisors in the Boulevard and Landscape Division of the City of Milwaukee Department of Forestry. They also maintain there are proportionately more blacks in the lower paying Boulevard and Landscape Division than in the higher paying Tree Maintenance Division. As to the claim regarding the want of black supervisors they argue without any proof at all that the promotional mechanisms, i.e., written tests and oral interviews, cause the racial disparity.

In *Wards Cove Packing Co., Inc. v. Atonio,* — U.S. ——, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), the Supreme Court clarified the elements of a prima facie disparate impact case that the Title VII plaintiff must establish, along with the relative burdens of the parties once the prima facie case is made. *Wards Cove* expanded on *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) in which it was held that "the plaintiff's burden in establishing a prima facie case goes beyond the need to show that there are statistical disparities in the employer's workforce." *Id.* 108 S.Ct. at 2788.

*Wards Cove* involved salmon canneries in Alaska in which the unskilled "cannery jobs" were mainly filled by non-whites, while the skilled "non-cannery jobs" were predominantly filled with white workers. The court held that "[r]acial imbalance in one segment of an employer's workforce does not, without more, establish a prima facie case of disparate impact with respect to the selection of workers for the employer's other positions...." *Wards Cove,* 109 S.Ct. at 2122. Thus, "the percentage of non-white workers found in other positions in the employer's labor force is irrelevant to the question of a prima facie statistical case of disparate impact." *Id.* at 2123. The court further stressed that in light of *Watson,* the question of causation is an essential element of a prima facie case. This requires that the Title VII plaintiff

must show not only a racial imbalance in the workforce but "must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack." *Id.* 108 S.Ct. at 2124. Other than some vague allegations in the depositions and affidavits that applicants for promotion to supervisory positions should not be required to take tests, there is no specificity as to the challenged employment practice or as to how the challenged practice caused a racial imbalance.

In short, the defendants have satisfied the court that there is no genuine issue of material fact present in the record before me which would lead a trier of fact to conclude that the defendants are guilty of employment discrimination. The court has been unable to find any assertions that qualified blacks have applied to the Tree Maintenance Division and have been denied the opportunity. On the contrary, it appears that many of the boulevard workers choose not to be employed in a division in which the workers are required to perform their functions at dangerous altitudes.

Defendants have further satisfied the court, although in the absence of a prima facie case they are not required to do so, that the pay differences between the Boulevard Division and the Tree Division are justified by the dangers involved. It further appears that the defendants are making genuine efforts to employ qualified minorities in supervisory positions. The court is sympathetic with the situation of plaintiff Thomas Wynn, who is obviously a very qualified individual. The court must find, however, that there is no genuine issue of fact with respect to the City's decision not to promote him to supervisor.

Many of the plaintiffs who were deposed expressed dissatisfaction with the fact that plaintiff Eddie Martin was not a supervisor because of his general knowledge and his longevity in the department. Again, however, there has been no showing that the tests which Mr. Martin has consistently failed are in any way skewed to have a disparate impact upon the promotion of blacks. The court must find that when employment requires the use of machinery and potentially dangerous chemicals such as pesticides, it is entirely reasonable to require tests. In the absence of any showing that such tests lead to racial discrimination, I must find in favor of the defendants. Needless to say, the plaintiffs have also failed to support their claim under 42 U.S.C. §§ 1981, 1983 and 1985(2). Accordingly,

IT IS ORDERED that the defendants' motion for summary judgment in the above-consolidated case be and hereby IS GRANTED. The clerk is ordered to enter judgment in favor of the defendants and against the plaintiffs.

Done and Ordered.